## SMITH v. WASHINGTON NAT. INS. CO.
### No. 3238.

Court of Civil Appeals of Texas. Beaumont.
Jan. 13, 1938.

Rehearing Denied June 1, 1938.

McNeill & McNeill, of Beaumont, for appellant.

Barnes & Barnes, of Beaumont, for appellee.

O'QUINN, Justice.

Appellant was plaintiff below. He sued appellee in the County Court at Law, of Jefferson County, Texas, to recover on a health and accident insurance policy covering him issued by appellee February 26, 1297. Briefly, in substance, he alleged that the policy was a non-cancellable one except for non-payment of dues. That at the time the policy was issued, February 26, 1927, he also executed and delivered what is denominated a "Pay Master's Order" directed to his employer, the N. O. T. & M. Railway Company, authorizing it to deduct from his monthly earnings the sum of $4.20 and send same to the insurance company, that being the monthly premium to be paid by appellant on said policy. That such method of paying the monthly premium was agreed to, and was in fact requested by appellee. That the policy provided that it should not be cancelled until notice of such cancellation by the insurance company was given to appellant. That the premiums on said policy were promptly and regularly paid from February 26, 1927, up to September 27, 1935. That on said date, September 27, 1935, without any notice to appellant, it notified and instructed his employer, the said railway company, not to remit any further payment of premiums on said policy. That on and after said date, he believed his policy was in good standing and that all premiums had been paid as and when they matured, and so continued to believe, not having any notice from appellee or from his employer that such premiums had not been paid, and while he was still in the services of his employer, on February 21, 1936, he received an injury protected against by said policy, whereupon he called upon his insurer, appellee, to pay the damages which he had suffered, and which was covered by said policy, and payment was denied because, as insisted by appellee, said policy had lapsed for want of the payment of dues from and after September 27, 1935, the date appellee had instructed appellant's employer, said railway company, not to pay any further premiums on said policy. That from and after the issuance of said policy, to the date of the filing of the suit, on each and every month he had more than the sum of $4.20 owing to him as wages from and out of which said monthly premiums could or would have been paid but for the instructions given to his said employer by appellee, of which he had not at any time had notice as provided he should have in the policy.

The defendant, appellee, answered by general demurrer, numerous special exceptions, general denial, and specially that the policy contained a provision that it should lapse in the event the monthly premiums were not paid as and when due, and that no premium had been paid since September 27, 1935, wherefore the policy lapsed on October 1, 1935, since when it had not

been renewed, and was not in force at the time of appellant's injury.

The court sustained the appellee's general demurrer, and appellant declining to amend, dismissed the suit. This appeal is from that order.

Obviously the general demurrer was sustained on the ground that the policy had lapsed because of failure to pay monthly premiums. As before stated, at the request of appellee appellant gave appellee a "Pay Master's Order" for the monthly payment of premiums becoming due under the policy, said order reading:

"Washington Fidelity National Insurance Co.

"Paymaster's Order

"Continuous Order, providing for Monthly Payments

"John D. Smith.

"Policy No. 326734

Date February 26, 1927.

"For value received, I hereby authorize the paymaster of my employer, N. O. T. & M. Ry., or its successors, to pay to the Washington Fidelity National Insurance Company, or its successors, hereinafter called the Insurance Company, or its authorized agent, out of my share of wages due me, or which may become due me from said employer as follows:—

"$9.20 from my share of earnings for month of March, 1927, or for preceding month if I leave the service of my employer, and the further sum of $4.20 from my share of earnings for each month thereafter.

"Such deductions, only if actually made and paid to said Insurance Company before the expiration of the next following month in each case, shall respectively cover payments on the insurance policy for which I have this date applied to said Insurance Company, as follows: The first of said deductions shall cover the insurance for the first period specified in the policy plus one calendar month, and each subsequent deduction shall cover the premium for an extension of one calendar month.

"I understand and agree (1) that this order shall not be revocable until after the first payment shall have been made to the Insurance Company and then only by my surrender of the policy and written notification from me to said Insurance Company; (2) that if no deduction is actually made and paid to the Insurance Company as provided, the insurance shall not be ef-

fective; (3) that my insurance based hereon shall immediately terminate, except as it may be kept in force by premiums previously paid, if for any reason I cease to be employed by said employer, or if I revoke this order as above provided, or if any deduction is not made and paid to the Insurance Company as provided; (4) that this order is not accepted by said Insurance Company as, and shall not be deemed, payment for insurance unless and until the deductions are actually made and money received by said Insurance Company; (5) and that should my policy lapse for any reason the subsequent payment of a premium or the resumption of deductions under this order shall reinstate the policy only as provided therein.

"I have read this order and understand it, and that the amounts above written are to be deducted from my wages in the manner and at the times stated.

"Sign here ................. J. D. Smith

"Occupation Gang Foreman

"Gang or Section No. 3. . Check or Working No. ———."

This order was accepted by appellant's employer, the N. O. T. & M. Ry., and the monthly premiums on the policy of $4.20 per month were retained out of appellant's monthly wages and remitted to appellee for each and every month for eight and one-half years, or from the date of the policy, February 26, 1927, up to September 27, 1935. Appellant alleged that on September 27, 1935, appellee, without any notice to him, notified and requested the railway company, appellant's employer, not to remit for any more premiums, which it did not do, but neither appellee nor the railway company gave any notice of this to appellant, and he alleged that he thought his premiums were, as usual, being regularly paid out of his wages until he received an injury covered by the policy on February 21, 1936, when he made claim for his insurance due by reason of his injury, and was informed by appellee that the policy had lapsed for non-payment of dues. By the general intendments of his petition, appellant alleged that the policy provided that notice should be given him before the policy could be canceled, and that he had never been given such notice, wherefore the policy was in full force and effect at the time of the injury.

The facts alleged by appellant must be deemed true as against a general demurrer. Under the policy it was the

duty of appellee to give to appellant notice of its instructions to his employer not to remit premium payments after September 27, 1935, and in the absence of such notice, under the terms of the policy, it could not cancel the policy. But appellee argues that appellant had such notice because, it says, appellant for each month elapsing after September 27, 1935, to the date of the injury on February 21, 1936, received from his employer his full wages without any deductions, and so was visited with full knowledge that the premiums were not being deducted nor remitted to appellee. This contention, we think, is without merit. Appellee under its written contract bound itself, not appellant's employer, to give appellant notice of the intended cancellation. The contract of the policy did not leave it to inference from some other fact that might come to appellant's notice that the policy had or was lapsed, but such notice was to be in fact given to appellant by appellee. Beets v. Inter Ocean Casualty Co., 159 Tenn. 564, 20 S.W.2d 1040; Eury v. Standard Life & Accident Ins. Co., 89 Tenn. 427, 14 S.W. 929, 10 L.R.A. 534; Lyon v. Travelers' Ins. Co., 55 Mich. 141, 20 N.W. 829, 54 Am. Rep. 354; Pacific Mutual Life Ins. Co. v. Walker, 67 Ark. 147, 53 S.W. 675; Mutual Life Ins. Co. v. Davis, Tex.Civ.App., 154 S.W. 1184; Kavanaugh v. Security Trust & Life Ins. Co., 117 Tenn. 33, 96 S.W. 499, 7 L.R.A.,N.S., 253, 10 Ann.Cas. 680. Moreover, there is nothing alleged to show that appellant was paid by the day, or by the hour. Nothing as to the amount of wages being the same each day or week. So that in the state of pleading, it cannot be assumed that the pay checks for wages received by appellant could or would have brought knowledge to him that his insurance premiums were not being deducted monthly as per the contract and remitted to appellee. A copy of the Paymaster's Order plead by appellant was attached to his petition as an exhibit. It showed that he was employed by the railway company as a "Gang Foreman". Whether as a Section Gang, or of some other kind of gang, does not appear from the pleading, but it is a matter of common knowledge that "Foremen" of gangs of workmen usually work by the hour and the hours of work vary, so that the amount of wages received would vary according to the number of hours worked. In that case the amount of wages received would vary according to the number of hours worked. In that case the pay would not be a fixed or constant sum.

It was error to sustain the general demurrer. Accordingly the judgment is reversed and the cause remanded for another trial.