(133 So. 300)

## UNION MUT. INS. CO. v. PEAVY.
### 7 Div. 631.

Court of Appeals of Alabama.
Oct. 7, 1930.

Rehearing Denied Nov. 11, 1930.

Inzer, Inzer & Davis, of Gadsden, for appellant.

Alto V. Lee, of Gadsden, for appellee.

RICE, J.

Appellee sued to recover the sum of $59, claimed to be due under a policy of insurance issued by the appellant to Georgia Peavy, the mother of appellee. By the terms of the policy the assured was to pay a weekly premium of 25 cents, and the appellant agreed to pay a burial benefit of $59 upon the death of assured, to William Peavy, the beneficiary named, and further agreed to pay to assured a stipulated weekly benefit for sickness or accident, subject to limitations and conditions stated in the policy.

The complaint, in one count, follows the form (12) set out in section 9531 of the Code of 1923, alleges that the policy was issued on June 7, 1926, that assured died May 19, 1928, and, as stated, claims only the death or funeral benefit.

Appellant objected to the introduction of the policy in evidence on the stated grounds that the policy was not shown to be in force at the time of the death of the assured, and because the same was irrelevant and inadmissible.

Neither averment as to the term for which the policy was issued nor the fact that the policy was in force is contained in the present Code form—different, it is to be observed, from the form laid down in section 5382 of the 1907 Code. Plaintiff was not required, as a condition to introducing the

policy, to show that it was in force. His prima facie case was made when he showed proof of the death of assured, and notice to the defendant, and introduced the policy in his possession. Sovereign Camp, W. O. W., v. Carrell, 218 Ala. 613, 119 So. 640.

■ Forfeiture is a defensive matter to be brought forward by the defendant. Locomotive Engineers' Mut. Life & Acc. Ins. Ass'n v. Hughes, 201 Ala. 58, 77 So. 352.

■ Notwithstanding the policy in suit carried a benefit for sickness or accident, it was nevertheless a life policy. Eminent Household, etc., v. Gallant, 194 Ala. 680, 69 So. 884.

Both the changed statutory form for the complaint and the difference in character of the policies dealt with render inapt the cases of United States H. & A. Co. v. Veitch, 161 Ala. 630, 50 So. 95, and Locomotive Engineers' Mut. Life & Acc. Ass'n v. Hughes (in this particular) supra. The policy was received in evidence without error.

■ Appellant relies upon those clauses of the policy contract providing (a) that premiums shall be payable each Monday in advance, and that a failure to pay for two Mondays shall render the policy void; (b) that, in event of a lapse, the assured may reinstate by making application to that end on blanks furnished by the company, and paying all past-due premiums (if paid in installments, the same to be received by the company as deposits on the past-due amount and without assuming any liability on that account, other than the obligation to refund in event the application is denied); and (c) that the company shall not be liable for sickness or death occurring within five weeks from the date of reinstatement following a lapse.

The receipts offered in evidence show the payment by assured of a sum equal to the aggregate of all weekly premiums due by assured under the policy from the time of its issuance to time of her death. True, one receipt, although admittedly issued by the authorized agent of the company, was said by the agent to be a duplicate. But the credence to be accorded this testimony, in contradiction of the writing, was for the jury.

The receipts in evidence and the collection record of the agent indicate an irregularity in the payment of her premiums by the assured continuing for a period of some six months just preceding the death of assured. In the beginning it appears that, assured being two weeks behind, a multiple payment was accepted and entered in assured's receipt book; no application for reinstatement being offered or demanded. About this time it appears that the receipt book became filled up. Other delinquencies or irregularities followed. Payments were received by the agent. No new book was furnished assured, but separate receipts, termed "revival receipts," were issued. At no time does an application for reinstatement appear to have been mentioned. Such a course of dealing was continued up to the last. If there was any lapse or forfeiture, there were at least four during this six-month period. No affirmative declaration of a forfeiture or lapse appears. Repeated calling by the agent to collect; repeated acceptance and retention of payments as made; the total absence of any requirement of a formal effort to reinstate (or even the furnishing of the prescribed blank)—all this is inconsistent, in any conception of fair dealings, with the idea that the company treated assured as a lapsed member. For what purpose would the company continue to demand and the assured to pay premiums long after the assured had lapsed with nothing pending to reinstate her?

Under the whole evidence we think the jury was justified in finding the issue in favor of the plaintiff (appellee). We are not willing to disturb its verdict, nor the judgment of the trial court refusing to set it aside.

■ There was evidence that the agent of the defendant company, a short time before the death of assured, took up, "by mistake," he testified, the receipt book and all the receipts of assured and kept them in his possession a week before returning them. There was also evidence, and this without objection, that he declared to one Colvin, a witness for plaintiff, that assured was "paid up." This witness was asked if McAlpine, the agent, ever told him that assured "had no insurance due to failure to pay premiums," and, over objection, was permitted to answer in the negative. In this there was no error. The objection to the question was merely general.

■ Defendant's agent, McAlpine, further testified that some months before her death assured had applied for sick benefits under the policy and had been denied them on the ground that she was not then in good standing. Thereupon the application was offered in evidence and disallowed upon plaintiff's objection thereto. In this we observe no injury to appellant. The benefit of the fact had been derived from the testimony of the agent. The application itself, appearing in the bill of exceptions, bears no indorsement of any action by the company, denial or otherwise.

■■ The fact, if so, that Colvin, plaintiff's witness, had at some time applied for benefits and had been denied, was not relevant to any issue in the case. If the purpose was to show bias or partiality on the part of the witness, such purpose was not disclosed. The appropriate practice would have been first to inquire as to witness' feeling toward defend-

ant. Smith **v.** Clemmons, 216 Ala. 52, 112 So. 442.

In any aspect of the case plaintiff was entitled to recover. If the policy was alive and in force, then to the full amount claimed; if it had lapsed, then to the premiums paid after it had lapsed. The court correctly so charged the jury.

Defendant's charges 2 and 3 ignore the waiver feature of the evidence; assume as a fact that a lapse was suffered or declared, and that payments were made as deposits on amount due for reinstatement. These charges were properly refused.

Finding no error, the judgment is affirmed.

Affirmed.